United States District Court      Southern District of Texas

Angel Patterson, *et al.*, §
§
        Plaintiffs, §
§
*versus* §     Civil Action H-09-1897
§
City of Houston, *et al.*, §
§
        Defendants. §

## Opinion on Summary Judgment

1.     *Introduction.*

After two Houston police officers killed Marnell Villareal, the Pattersons, her children, brought a suit for her death. The Pattersons said the officers used excessive force, violating their mother's civil rights. The City of Houston seeks summary judgment. They are entitled to it.

2.     *Background.*

Late on the night of May 5, 2007, Marnell Villareal walked into the lobby of the police headquarters in downtown Houston. It is an office building, not a place to report crimes. Villareal told officers that she had been poisoned and had devices implanted in her body during an earlier incarceration. The officers offered to allow Villareal inside only if she was escorted because she had brought a pistol into the building once in November of 2006. Villareal left, but she quickly returned and asked to use the bathroom. The officers repeated their offer. Villareal left again and then returned at 2:15 a.m. on May 6th.

An officer, Emmitt Smith, saw her outside the door and walked towards her. He intended to ask her to leave because the evening shift officers told him that she was not allowed inside. Villareal entered the building before Smith got to the door. Villareal was walking quickly, crying, and mumbling incoherently. Smith readied his taser because he was worried about her. As Villareal walked through the metal detector, the alarm sounded. Villareal pulled out a knife and held it over her head. She made jabbing motions towards her head and abdomen

and said, "lets end this." Then she repeatedly said, "kill me, just kill me." Smith tried to comfort her and told her to put the knife down. Villareal did not respond.

Officer A.B. Clay heard the conversation, walked towards Villareal, drew his pistol, and told Villareal to drop her knife. Smith called for backup while Clay continued to tell her to drop her knife. Villareal then walked towards Clay with the knife in her raised right hand and the blade pointed at Clay. Smith attempted to stop Villareal with a taser, but it did not contact her skin. Villareal continued walking towards Clay, even after he took a step back. At that point, Clay fired once at Villareal. The shot killed her.

3.  *Excessive Force.*

The Pattersons insist that Clay and Smith used excessive force, violating their mother's civil rights. For force to be constitutionally excessive, it must be more than a tort and must be significantly disproportionate to the threat. If a reasonable person, under the same circumstances as the officer, would believe his life is endangered, deadly force is not excessive. A reasonable person would believe their life was in danger if they were threatened with a knife.

Villareal showed she was upset and irrational. She repeatedly returned to the building after leaving, drew a knife, ignored several demands to drop the knife, made stabbing motions at herself, avoided non-lethal force, and walked towards Clay with her knife pointed at him. Clay reasonably believed his life was threatened when Villareal approached with her knife aimed at him.

4.  *Liability.*

The Pattersons said the city is liable for its officers' actions because they were on duty when Villareal was shot. Municipalities are only responsible for their employees' tort violations. Municipalities are liable for constitutional violations when their policy causes the violation. A policy is an officially adopted rule or custom the principal officers of the municipality had the opportunity to learn of.

The Pattersons said the city had two customs that caused their mother's death. They insist the city condoned excessive force and insufficiently trained officers to deal with the mentally ill.

The Pattersons failed to identify a pattern of excessive force that could be construed as a policy. Even had the city had a schedule of deadly force, it would not have been enough

because not all deadly force is excessive. To prove the city allowed excessive force the Pattersons must have shown a schedule of excessive deadly force where the rate of excessive force was above the rate of human error. They did not.

The Pattersons said their mother's death was evidence of insufficient training. One death is not enough to show a policy. Even if it were, the Pattersons did not identify an alternative way to deal with the situation had other training been available. No training would have changed the outcome unless officers were taught to not defend themselves from the mentally ill. That is unrealistic. The city said they do train officers to deal with the mentally ill. Michael A. Dirden, Executive Assistant Chief of Police for the city, detailed the training program in his affidavit. The Pattersons did not identify a policy that caused their mother's death.

5. *Spoliation.*

The videotapes of the police headquarter's lobby either did not record or were lost. The Pattersons insist the tapes were willfully destroyed because they would have shown their mother was killed in an abuse of power.

There is neither evidence of an abuse of power nor evidence that the tapes would show an abuse of power. There is no evidence that the tapes were willfully destroyed. Unsupported claims of a conspiracy theory is not evidence.

6. *Negligence .*

Police officers are not directly liable for torts committed while on duty, even though private citizens would be under the same circumstances. Police officers are given leniency when using force because they cannot leave dangerous situations. If they did, it would endanger the public. Officers have a duty to act reasonably and are negligent only when their force is above the constitutional margin for excessive force. An officer's duty does not arbitrarily change if the aggressor is mentally ill.

Clay had a duty to act reasonably with Villareal. Villareal's mental illness did not make her any less dangerous when she walked towards Clay with a knife. When Clay shot Villareal he did not breach his duty because he acted reasonably. Clay was not negligent.

7. *Damages.*

Even if the Pattersons had a valid claim, they did not plead compensable elements of damage. Villareal died promptly – precluding suffering. The Pattersons were all adults and not financially dependent on Villareal. Villareal was mentally ill and unable to give emotional support. No basis was given for awarding monetary damages.

8. *Conclusion.*

The Pattersons identified no policy that should have prevented their mother's death. Forbidding officers to defend themselves is the only policy that could have prevented Marnell Villareal's death. The Pattersons did not show that Officers Emmitt Smith and A.B. Clay used excessive force. The City of Houston and Officers Smith and Clay are not liable for a constitutional violation.

Signed on June 3, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge